[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition for writ of habeas corpus alleging, in two counts, illegal confinement because of prosecutorial misconduct and ineffective assistance of trial CT Page 7172 counsel, respectively.
As a result of a jury trial, the petitioner was found guilty of murder, in violation of C.G.S. Section 53a-54(a) and received a thirty year prison sentence. The petitioner appealed this conviction, and the conviction was affirmed, State v. Jones, 205 Conn. 723 (1988). For purposes of this memorandum, the facts of the case and the details of the petitioner's jury trial are adequately set forth in that decision and are incorporated herein. To that information the court adds the following.
On the first day of jury selection, October 3, 1986, the petitioner's trial counsel, Attorney Joseph Ganim, notified the trial court that the prosecution had that morning disclosed the identity of a witness, Tony Carswell, who might be called to place the petitioner at the scene of the homicide and refute the petitioner's alibi defense (Petitioner's Exhibit A-1, p. 2). Attorney Ganim requested that the rule providing a ten day period between such disclosure and trial, contained in C.P.B. Section 764, be implemented (Petitioner's Exhibit A-1, pp. 4 and 5). The trial court deferred action on this request until Ganim had the opportunity to interview Carswell over the intervening weekend (Petitioner's Ex A-1, pp. 12 and 13).
Attorney Ganim did interview Carswell at Carswell's place of incarceration during the weekend before resumption of the trial. Carswell informed Ganim that he had not seen the petitioner commit the killing, as he had previously indicated in statements to law enforcement personnel. Carswell accounted for these prior contradictory statements as the fictional product of his desire for leniency in his own criminal matters. Carswell provided a written statement to that effect. Armed with this information and written statement; with his knowledge that Carswell had twelve previous felony convictions, which might be used to impeach his credibility; and with his knowledge that the prosecution was having difficulty locating Regina Bullock, an important witness for the state, Attorney Ganim made the tactical decision not to press for postponement of the trial.
Attorney Ganim discussed this topic with the petitioner and based his decision on the above factors as well as other considerations. He had obtained the trial date in response to his filing a motion for speedy trial. The case against the petitioner had been lingering on the trial list for two years. The memories of defense witnesses and their availability to testify was fading with the passage of time. CT Page 7173
While Attorney Ganim did not renew his request to have the trial postponed, he did, apparently, attempt to prevent Carswell from being called as a witness based on the prosecutions violation of C.P.B. Section 764 (Petitioner's Exhibit A-4, p. 140). The trial court overruled this request and allowed Carswell to testify (Petitioner's Exhibit A-4, p. 153), and Attorney Ganim excepted to this ruling (Petitioner's Exhibit A-4, p. 153).
Carswell's testimony implicated the petitioner (Petitioner's Exhibit A-4, pp. 156 through 168). Attorney Ganim vigorously cross-examined Carswell, bringing out Carswell's extensive history of felony convictions, his opportunity to benefit by testifying on behalf of the state; his personal animosity toward the petitioner; his previous oral and written statements disclaiming knowledge of the incident; his willingness to lie under oath; and his sketchy and inconsistent recollection of the details surrounding the event of the homicide (Petitioner's Exhibit A-4, pp 168 through 220; pp 228 through 231; and p. 233).
During final argument, the State's Attorney at the criminal trial indicated that its own witness, Andrew Winstead, had lied to the jury, committed perjury, and had lied "bold face" (Petitioner's Exhibit A-8, pp. 654 and 656). He also pointed out that the versions of events rendered by certain defense witnesses first surfaced only after the jury trial had commenced. He asked the jury to view this as indicating that these versions were recently fabricated and unworthy of belief (Petitioner's Exhibit A-8, pp 664 through 670 and pp 695 and 696).
Also, the State's Attorney suggested that the petitioner's counsel had cut off an answer Carswell was attempting to recount because the answer was unfavorable to the petitioner (Petitioner's Exhibit A-8, p. 667). Further, the State's Attorney responded to defense counsel's characterization of the prosecution case as a weak one by noting the extensive efforts the defense had gone through to counter the state's case (Petitioner's Exhibit A-8, pp 692 and 693). Finally, the State's Attorney also commented, in response to an argument made by defense counsel, that the jury should not consider the repercussions of their verdict (Petitioner's Exhibit A-8, p. 693).
 I
The first count of the revised, amended petition asserts that the petitioner's confinement is illegal because of improper prosecutorial argument. The petitioner introduced CT Page 7174 no evidence at the habeas proceeding as to the reasons for the petitioner's failure to raise this issue in his direct appeal. It is well established that habeas corpus is not an alternative to direct appeal, Galland v. Bronson, 204 Conn. 330
(1987), p. 333. A habeas petitioner must prove by a fair preponderance of the evidence that he did not deliberately bypass the orderly procedure of direct appeal, Ibid.
Because no evidence regarding a lack of deliberate bypass was adduced, the court finds that the petitioner has failed to meet his burden of proof on this issue.
 II
With respect to the second count of the petition, the petitioner claims that Attorney Ganim rendered ineffective assistance by failing to object to improper argument by the State's Attorney at his jury trial and by failing to request a continuance based on the late disclosure of the identity of Carswell.
There are two components to a claim of ineffective assistance of counsel, Johnson v. Commissioner, 218 Conn. 403
(1991), p. 424. First, the petitioner must prove that his counsel's performance was deficient, and second, that the deficient performance prejudiced the defense, Ibid. As to deficiency of performance, the petitioner must demonstrate that his attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington,446 U.S. 668 (1984), pp. 687 and 688, i.e. reasonableness "under prevailing professional norms," Ibid.
In the instant case the petitioner introduced no expert testimony as to prevailing professional norms with respect to the issues raised in the second count. The only evidence bearing on these points came from Attorney Ganim.
 A
Attorney Ganim indicated that, with regard to the State's Attorney's final argument, he found none of the portions of that argument presently under scrutiny sufficiently prejudicial to warrant an objection. The court agrees.
The State's Attorney's depiction of Winstead as a boldfaced liar and perjurer appears to be fair comment on the state of the evidence. Winstead, under oath, gave two utterly contradictory versions of the killing. Moreover, Winstead was a witness called by the prosecution CT Page 7175 not the defense. While it is true that the State's Attorney urged the jury to accept one of Winstead's stories over another, portraying Winstead as a liar and perjurer would appear to benefit the defense by creating doubt as to the truth of any of his testimony. It should be noted that Attorney Ganim used a similar technique in his final argument with reference to Carswell (Petitioner's Exhibit A-8, pp. 677 and 679). It is understandable that defense counsel would not object to a tactic which he will employ on his client's behalf.
As to the State's Attorney's comments regarding the late emergence of the defense witnesses' version of events, this also strikes the court as a legitimate method of persuading the jury that the version was fabricated for trial. This comment did not go unanswered, however. Attorney Ganim argued that the social and cultural background of the witnesses made the earlier reporting of their story unlikely (Petitioner's Exhibit A-8, p. 686). The State's Attorney's comment certainly "opened the door" for the defense to reiterate this exculpatory testimony which reiteration did, indeed, occur.
The State's Attorney's comment concerning the vigor of the defense response to the state's case came in response to the petitioner's counsel's argument that the state's case was a weak one. This comment does not appear to be a "low" blow. The petitioner has cited no case law that so holds, and the court finds no fault with Attorney Ganim for not objecting to it.
As for the State's Attorney's comment that defense counsel had cut off Carswell before an unfavorable answer could be spoken, Attorney Ganim did not consider this statement as improper or prejudicial enough to merit underscoring the point with an objection or a cautionary instruction. Again, no evidence was presented at the habeas proceeding proving that a reasonably competent trial attorney would have objected to the comment under prevailing professional norms.
Finally, the petitioner takes umbrage with Attorney Ganim's failure to object to the State's Attorney's comment during final argument which the petitioner claims invited the jury to speculate as to the consequences of letting a criminal go free. Taken out of context this comment might seem objectionable. However, a reading of the entire statement on this topic by the State's Attorney clearly shows that the State's Attorney was imploring the jury not to engage in such speculation (Petitioner's Exhibit A-8, p. CT Page 7176 693). The State's Attorney pointed out that the jury should not speculate as to the potential punishment which might follow conviction for the same reasons they should not speculate as to what would happen upon acquittal. The State's Attorney urged the jury to refrain from such speculation. This comment was completely proper.
The petitioner is constitutionally entitled to a fair trial and competent representation. But that does not necessitate that "defense counsel will recognize and raise every conceivable constitutional claim," Johnson v. Commissioner, supra, p. 425. Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, Safford v. Warden, 223 Conn. 180 (1992), p. 193. Because of the absence of evidence that Attorney Ganim's performance fell below prevailing professional norms with respect to his decision not to object to the prosecutorial argument discussed, the petitioner cannot succeed on this ground.
The petitioner also argues that Attorney Ganim was deficient in not requesting a continuance to engage in further investigation concerning Carswell. Some additional factual background is necessary to discuss this issue. During the four week period between the verdict and sentencing in this case, the petitioner canvassed the neighborhood in which the incident took place and and spoke to the sister of a former girlfriend of Carswell by the name of Judy Grant. This conversation led to the procuring of a statement from Grant in which she indicated that Carswell was with her throughout the day of the homicide and could not have witnessed it (Petitioner's Exhibit B). This statement was taken on November 20, 1986, five days before sentencing.
The petitioner asserts that, had a continuance been requested and obtained, the testimony of Carswell, which implicated the petitioner could have been impeached by the rebuttal testimony of Carswell's former girlfriend. This claim is based purely on hindsight. At the time Carswell testified the existence of Ms. Grant was unknown as was the content of her potential testimony. A fair assessment of an attorney's performance "requires that every effort be made to eliminate the distorting effects of hindsight Johnson v. Commissioner, supra, p. 425. The conduct in question is evaluated from the attorney's perspective at the time the conduct occurred, Ibid.
At the time of Carswell's testimony, Attorney Ganim knew that Carswell was impeachable through his criminal record, CT Page 7177 his motives to testify favorably for the state and against the petitioner, and the previous oral and written statements acknowledging that he lied when he implicated the petitioner. Ganim's cross-examination of Carswell was lengthy and dogged. Attorney Ganim also feared that the additional passage of time could weaken the defense case by hampering the defense's ability to keep its witnesses available and their testimony credible. Ganim also knew that the prosecution had not yet located Regina Bullock, a potential state's witness who had given a written sworn statement wherein she claimed that the petitioner admitted to her that he killed the victim (Respondent's Exhibit 1). The risk that Ms. Bullock might be found as a result of any postponement weighs heavily against the possible benefit of requesting a delay when no favorable evidence was known to exist at the time the decision had to be made.
As indicated above, the petitioner introduced no expert testimony regarding prevailing professional norms concerning a request for a continuance under such circumstances. Attorney Ganim testified that the decision to go forward with the trial and not request a delay was a tactical one for the reasons noted, and the court finds his testimony credible.
Also, the trial judge's action in denying the motion to bar Carswell's testimony suggests that it is unlikely any request for delay would have been granted even if requested. The presumption is that counsel's action might be considered sound trial strategy, Safford v. Warden, supra. The court finds that Attorney Ganim's representation of the petitioner has not been shown to have been deficient on this ground.
For the above reasons, the petition is dismissed.
BY THE COURT,
Hon. Samuel J. Sferrazza Superior Court Judge