[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from confinement resulting from a judgment of conviction following a CT Page 421 plea of guilty to a charge of attempted robbery, 1st degree, in violation of General Statutes § 53a-49 and 53a-134(a)(3). The petitioner was sentenced to a term of fourteen years, execution suspended after eight years, with a probationary term of three years to commence on his release from incarceration.
The petitioner claims his confinement is unlawful because the attorney representing him at the time rendered ineffective assistance by failing to request an examination pursuant to General Statutes § 54-56d, to determine if Soyini was competent to understand the nature of the charges and proceedings against him, or to assist counsel in his defense; by failing to investigate and provide Soyini with a defense of legal insanity and by failing to properly prepare for the sentencing hearing.
The fourth count of the amended petition alleging that counsel failed to advise Soyini of his right to a sentence review is deemed abandoned. The Court notes that Soyini timely filed an application for sentence review and, after hearing, his sentence was affirmed by the Review Division.
The Connecticut Supreme Court has adopted the two-prongedStrickland test for evaluating ineffective assistance claims.Ostolaza v. Warden, 26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his attorney's performance was substandard and there exists a reasonable probability that, but for the attorney's deficiencies, the outcome of the proceedings would have been different. Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his attorney's representation fell below an objective standard of reasonableness. Johnson v. Commissioner,218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing professional norms, Id. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding council's conduct from that attorney's perspective at the time of representation, Id.
In this case the petitioner testified as to his recollection of the proceeding, in the trial court. Dr. Kenneth Selig, an expert in the field of forensic psychiatry, testified concerning Soyini's mental condition. Atty. Kenneth Simon, who represented, the petitioner in the trial court, testified as to the relevant issues and the actions he took. Atty. Michael Boynton offered CT Page 422 opinion evidence as to the reasonableness of trial counsel's representation. A social worker with the office of the Public Defender, Kim McKeon, provided testimony as to her dealings with the petitioner.
The resolution of this case entails, to a significant degree, assessing the credibility of the witnesses where testimony was, frequently inconsistent on salient points. It is, of course, the province of the trier to weigh the testimony and to determine the issues of credibility. Within the foregoing framework, the Court makes the following findings and conclusions.
Atty. Simon did not render ineffective assistance by not requesting an examination pursuant to General Statutes § 54-56d. Atty. Simon (an experienced defense attorney) met with Soyini eight times between the date of his arrest in November 1991 and his sentencing on October 30, 1992. During this approximately one year period he had sometimes lengthy conversations with Soyini. There was never any question that Soyini did not understand the charges or the nature of the proceedings. They discussed potential defenses including Insanity and Alibi. Soyini consistently denied committing the crime and wanted to use an alibi defense with his wife as an alibi witness. Soyini's behavior, memory, comprehension, and his logical and coherent responses negated any suggestion of the need for a "54-56d" examination.
This assessment by Atty. Simon was corroborated by the social worker, Kim McKeon, who interviewed Soyini on two occasions. She met Soyini at Atty. Simon's request to investigate the potential for an insanity defense. She obtained medical releases from the petitioner and obtained his psychiatric records.
Soyini's competence is further corroborated by the transcripts of his plea on August 11, 1992 and his sentencing on October 30, 1992. On August 11, 1992, his answers to the judge's canvas were direct and appropriate. The disposition of this case was the result of plea bargaining and Soyini indicated his willingness to accept the trial court's indicated sentence. He had earlier rejected the plea agreement and had instructed Atty. Simon to use an alibi defense, but in October of 1992, as the result of a disagreement with his wife, he found himself without a place to stay and that situation led him to seek out Atty. Simon to inquire if he could still get the recommended sentence. He entered his plea after Atty. Simon confirmed the offer was still open. CT Page 423
Between the plea and sentencing, Soyini was incarcerated at his request (previously he had been out on bond).
On the day of sentencing, Atty. Simon spoke to Soyini. They discussed the pre-sentence report and Atty. Simon asked Soyini if he wanted to be sentenced that day or perhaps move to withdraw his plea. According to Soyini, he was taking medication since his incarceration which helped stabilize him, thus, by his own testimony would have been in better mental condition at his sentencing. But even then he elected to proceed. The transcript shows that he addressed the court quite rationally, although briefly, and he never raised any claim that he didn't understand any of the earlier proceedings, or that his plea was not voluntary or intelligently made.
Atty. Boynton, who testified as the petitioner's expert, was himself equivocal on the issue of asking for a competency evaluation. He conceded that it was difficult to say if a reasonably competent attorney should have requested one. He also conceded that a person with a psychiatric history is not necessarily incompetent, in fact most would be competent under our statutes.
Similarly, Dr. Selig's assessment that Soyini probably had a superficial understanding of the plea discussions and proceedings is not persuasive. He interviewed Soyini on March 1, 1994 and reviewed his psychiatric records and transcripts. This court credits the contemporaneous empirical observations of the people who interviewed Soyini at the time which included Atty. Simon, Kim McKeon, Kenneth Blaschke, (Senior Probation Officer) who prepared the pre-sentence report, and the transcripts of the proceedings. While it is uncontroverted that Soyini had a mental disorder, that does not per se, indicate the need for a "54-56d" examination. SeeBethea v. Commissioner, 36 Conn. 641, 645 (1995).
Atty. Simon's representation was not substandard in this regard.
As to the failure to utilize or investigate an insanity defense, this potential defense was investigated by counsel, discussed with the petitioner and waived by him knowingly, intelligently and voluntarily.
Soyini testified at the habeas hearing in some detail as to the medications he had been taking and his psychiatric background CT Page 424 prior to the crime. He claimed he wanted to use an insanity defense but that Atty. Simon did not want to. While his memory appears intact on this point, he claims to have little or no recall as to other conversations with his attorney, i.e., he doesn't recall any plea discussions, or asking Atty. Simon to confirm the plea bargain, or his plea hearing.
From the credible evidence, the court finds that Atty. Simon obtained Soyini's psychiatric records, evaluated them with a view toward a viable insanity defense, discussed the petitioner's history with him and the possibility of an insanity defense, including the nature of the potential commitment to the Psychiatric Security Review Board, if such a defense were successful.
The petitioner always denied committing the crime to Atty. Simon and the petitioner claimed he was at home at the time. His alibi defense was expected to be corroborated by his wife's testimony and that was the agreed defense.
After discussion, Soyini did not want to consider an insanity defense because of the uncertainty of then dealing with the Psychiatric Security Review Board. Subsequently, as discussed above, Soyini decided to plead guilty to a court indicated sentence.
When Atty. Simon saw in the pre-sentence report that Soyini had disavowed any memory of the crime, he asked Soyini if he wanted to withdraw his plea but Soyini elected to proceed. It is not unusual for a defendant who pleads guilty to thereafter deny committing the crime in the probation interview. Both Attys. Boynton and Simon testified as to that. In this case, Soyini entered an "Alford" plea so his statement to the probation officer was not at all inconsistent with his plea.
It was Soyini's decision to proceed to trial, if there was to be one, using an alibi defense, after full discussion of his options with his attorney. His attorney investigated the petitioner's psychiatric background and explored the feasibility of the possible defense with him. The petitioner elected an alibi defense and eventually gave up his right to raise either. Atty. Simon's representation was not substandard with respect to this claim.
The petitioner has not met his burden of proving prejudice on this point either. Dr. Selig specifically stated that he reached CT Page 425 no conclusion and could not give an opinion with reasonable medical probability that the petitioner could have raised a viable insanity defense.
As to the claim that counsel failed to prepare for the sentencing hearing, there was no evidence or argument that Atty. Simon's sentencing presentation was below standard and that issue is deemed abandoned. The transcript shows that Atty. Simon had read the pre-sentence report and properly pointed out the positive aspects in the petitioner's background. He asked the court to consider a reduction in its indicated sentence, while the State asked for a sentence of thirteen years. The petitioner did in fact, receive the sentence he bargained for.
For the foregoing reasons, the petition for habeas corpus relief is dismissed.
Klaczak, J.