WILLIAM PARKER *v.* COMMISSIONER OF CORRECTION
(10125)
WOODROW CHAPMAN *v.* COMMISSIONER OF
CORRECTION
(10128)
GLENN BOWERS *v.* COMMISSIONER OF CORRECTION
(10133)
JAMES BRANTLEY *v.* COMMISSIONER OF CORRECTION
(10134)
DOUGLAS FRANKLIN *v.* COMMISSIONER OF CORRECTION
(10135)
JOHNNIE GATES *v.* COMMISSIONER OF CORRECTION
(10136)
ALVIN MOORE *v.* COMMISSIONER OF CORRECTION
(10137)
WILLIAM SHELTON *v.* COMMISSIONER OF CORRECTION
(10400)
MELVIN JONES *v.* COMMISSIONER OF CORRECTION
(10401)

DALY, O'CONNELL and LANDAU, Js.

Argued February 14—decision released June 2, 1992

*Albert B. Harper,* special public defender, for the appellants (petitioners).

*Paul J. Ferencek,* assistant state's attorney, for the appellee (respondent).

DALY, J. This appeal involves nine habeas corpus actions. Seven of the nine petitioners pleaded guilty and the other two were tried and convicted. In eight of these nine actions, the petitioners claim that their convictions should be vacated because their minority group was substantially underrepresented in the pool of venirepersons available for selection to the grand jury that indicted them, in violation of the right to equal protection of the laws as guaranteed by both the fourteenth amendment to the United States constitution[1] and article first, § 20, of the Connecticut constitution.[2] In the other action, the petitioner Woodrow Chapman

---

[1] The fourteenth amendment to the United States constitution, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[2] Article first, § 20, of the Connecticut constitution, as amended by articles V and XXI of the amendments, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

makes a similar claim on the ground that there was an overrepresentation of members of his minority group on the grand jury that indicted him. All nine petitioners also claim that the failure of their trial attorneys to raise this equal protection challenge constituted ineffective assistance of counsel in violation of the sixth[3] and fourteenth amendments to the federal constitution and article first, § 8, of the Connecticut constitution.[4] All of the petitioners are black.

The following facts are relevant to this appeal. From 1959 until his death in 1972, J. Edward Slavin was the high sheriff of New Haven County. In 1972, Slavin's chief deputy, Henry Healey, was elected to that position. Healey was familiar with Slavin's method for selecting grand jurors. Healey continued Slavin's method of calling people for grand jury service. They both selected prospective grand jurors from lists of names given by various leaders in the community. Neither Slavin nor Healey knew the accused's name or race when compiling a grand jury list.

During 1977 or 1978, Healey received complaints from defense attorneys in New Haven County that this selection system was racially discriminatory. Because of these complaints, Healey implemented a new selection process. He began to select persons for grand jury service from the master petit jury array list from the

---

[3] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[4] Article first, § 8, of the Connecticut constitution, as amended by article XVII of the amendments, provides in pertinent part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation . . . ."

previous court year. The master petit jury array list was compiled pursuant to General Statutes (Rev. to 1975) § 51-220.[5] Healey obtained this list from Nicholas Cimino, chief clerk of the New Haven judicial district and jury commissioner for New Haven County. Pursuant to § 51-220, prospective grand jurors were selected from each town according to a classification based on each town's population. This resulted in a greater proportion of prospective grand jurors from smaller towns than from larger towns. For example, § 51-220 called for the selection of thirty prospective grand jurors from towns with populations of between 750 and 1500. This equalled 2 percent of their populations. Towns with populations exceeding 100,000 produced only 1012 prospective grand jurors. At most, this amounted to only 1 percent of their populations. The petitioners, relying on a statistical decision theory, sought to estimate retrospectively the effect of § 51-220 on the proportion of black people available for grand jury arrays for the period from 1966 through 1981.

---

[5] "[General Statutes (Rev. to 1975)] Sec. 51-220. NUMBER OF JURORS FOR EACH TOWN. The number of jurors to be chosen for each town shall be as follows: In towns whose population as determined by the last-completed census of the United States is less than seven hundred and fifty, fifteen; in towns whose population so determined is at least seven hundred and fifty but not more than one thousand five hundred thirty; in towns whose population so determined is more than one thousand five hundred but not more than twenty-five hundred, fifty-six; in towns whose population so determined is more than twenty-five hundred but not more than five thousand, ninety; in towns whose population so determined is more than five thousand but not more than ten thousand, one hundred twenty; in towns whose population so determined is more than ten thousand but not more than twenty-five thousand, two hundred twenty-five; in towns whose population so determined is more than twenty-five thousand but not more than fifty thousand, three hundred thirty-seven; in towns whose population so determined is more than fifty thousand but not more than one hundred thousand, six hundred seventy-five; and in towns whose population so determined is more than one hundred thousand, one thousand and twelve; provided, for the purposes of this section, the population of a town shall not include the patients of any state institution located in such town."

At the habeas hearing, the eight petitioners claiming substantial underrepresentation of members of their minority group due to the improper selection of grand jurors relied on the decision of *Alston* v. *Manson,* 791 F.2d 255 (2d Cir. 1986), cert. denied, 479 U.S. 1084, 107 S. Ct. 1285, 94 L. Ed. 2d 143 (1987). In *Alston,* the Court of Appeals for the Second Circuit found that the selection of venirepersons pursuant to General Statutes (Rev. to 1975) § 51-220 caused the underrepresentation of minorities in the pool of prospective jurors serving New Haven County in 1975 and that this underrepresentation violated the equal protection clause. The eight petitioners claim that the underrepresentation of black people in the pool of prospective grand jurors serving New Haven County from 1966 to 1981 as well as the handpicking of prospective grand jurors by the high sheriff of New Haven County resulted in a violation of the principle of equal protection. Petitioner Chapman argues that an attempt by the high sheriff purposely to select members of his minority group also violated the principle of equal protection.

The habeas court held, in the seven actions involving the petitioners who pleaded guilty, that their unconditional guilty pleas resulted in a waiver of their grand jury selection claims. In the two remaining actions involving the petitioners who pleaded not guilty and were subsequently convicted, the habeas court found that the petitioners had not waived review of their claims because it found that they did not deliberately bypass their rights to challenge the array of prospective grand jurors. The court found that these petitioners did not know that the grand jury challenge claims could have been raised on direct appeal and that there was no evidence that they consented to their attorneys' decisions not to challenge the grand jury selection process.

The habeas court considered the merits of the latter two petitioners' grand jury challenge. It found that the petitioners failed to establish that § 51-220 resulted in the substantial underrepresentation of members of their minority group on the grand jury array as required to establish a violation of equal protection in *Castaneda* v. *Partida,* 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977). The habeas court found that there was insufficient evidence of underrepresentation of minorities for the period of 1966 through 1981 because there was no evidence presented as to the actual composition of the grand juries based on observations or on records of their composition. The court further found that none of the petitioners established that his attorney's failure to challenge the grand jury array amounted to ineffective assistance of counsel.

Here, the petitioners claim that the habeas court's finding that there was insufficient evidence of disproportionate representation of their minority groups in the arrays used for the selection of grand jurors at the time of their indictments and convictions was improper. They also claim that the court's findings concerning their ineffective assistance of counsel claims were improper.

I

Before addressing the merits of the equal protection claims, we note that the petitioners are raising this challenge to the grand jury array for the first time in this proceeding, years after their convictions. The petitioners in *Alston* v. *Manson,* supra, challenged the grand jury array at the time of their trial in 1975 claiming that § 51-220 resulted in discrimination against black people. At the time of the indictments in this action, Practice Book § 613[6] required that challenges

---

[6] "[Practice Book] Sec. 613. [Repealed as of Oct. 1, 1984.] [THE GRAND JURY]——CHALLENGES TO THE ARRAY

"The prosecuting authority or a defendant who has been held to answer in the superior court may challenge the array of jurors on the ground that

to grand jury arrays be filed within five days of the indictment. The failure to follow this requirement amounts to a trial level default that normally would constitute a waiver of this attempt to invalidate their convictions under Practice Book § 810.[7]

The habeas court avoided a finding of waiver through its application of the deliberate bypass standard of review.[8] The habeas court, upon finding that there was no deliberate bypass, should have applied the "cause and prejudice" standard based on our Supreme Court's decision in *Johnson* v. *Commissioner,* 218 Conn. 403, 589 A.2d 1214 (1991). We note that *Johnson* had not been published at the time of the habeas court's decision. That case involved a similar equal protection challenge to the selection of venirepersons for both grand

the grand jury was not selected, drawn or summoned in accordance with law. Any challenge to an array shall be made within five days after the indictment."

[7] "[Practice Book] Sec. 810. FAILURE TO RAISE DEFENSE, OBJECTION OR REQUEST

"Failure by a party, at or within the time provided by these rules, to raise defenses or objections or to make requests that must be made prior to trial shall constitute a waiver thereof, but a judicial authority, for good cause shown, may grant relief from such waiver, provided, however, that lack of jurisdiction over the offense charged or failure of the indictment or information to charge an offense may be raised by the defendant or noticed by the judicial authority at any time during the pendency of the proceedings."

[8] The habeas court applied the deliberate bypass test on the basis of *Vena* v. *Warden,* 154 Conn 363, 366–67, 225 A.2d 802 (1966). In *Vena* v. *Warden,* supra, our Supreme Court held "that a petitioner may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly to us if he alleges and proves, by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal." Thus, under the deliberate bypass standard, the petitioner is entitled to review of constitutional claims not raised on direct appeal if he establishes that the failure to raise the claim did not result from a knowing and voluntary waiver of the right to pursue the claim or if the decision not to raise the claim was made by counsel after conferring with the petitioner. Id., 367.

and petit juries. In that case, the habeas court reviewed the merits of the equal protection challenge after finding that the petitioners satisfied the deliberate bypass standard. In *Johnson* v. *Commissioner,* supra, 414–19, the court examined whether the deliberate bypass standard should be applied in a habeas proceeding to review constitutional claims not preserved because of a trial court default. The court was concerned that the deliberate bypass standard, if applied to the review of constitutional claims never brought to the trial court would cause "too great a burden on our criminal justice system." Id., 417.

In *Johnson* v. *Commissioner,* supra, our Supreme Court held that the federal "cause and prejudice" standard of *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), applies to constitutional claims not properly preserved because of a trial level default. Applying the "cause and prejudice" standard, the Supreme Court did not reach the merits of the petitioners' claims because it found that the petitioners failed to show good cause for their failure to challenge the jury arrays before trial. *Johnson* v. *Commissioner,* supra, 423.

In the present case, the petitioners failed to present any reasons that would support a finding of good cause for their failure to challenge the grand jury array at the trial court level, as required by Practice Book § 613. Under the standard adopted in *Johnson* v. *Commissioner,* supra, 419, the petitioners must establish good cause for their failure to raise this claim at trial and to demonstrate that they suffered actual prejudice before this court will review the merits of their claim. " '[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.' " Id., 422, quoting *Murray* v. *Carrier,* 477 U.S. 478, 486–87, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). The petitioners have failed to

show good cause for their failure to challenge the grand jury selection process during the pretrial period or on direct appeal. On the basis of this finding, we need not review the prejudice component of this standard of review. We need not address the habeas court's finding that a guilty plea operates as a waiver of any objection to a defect in the grand jury selection process because of our conclusion that the petitioners have failed to satisfy the first prong of the cause and prejudice standard.

## II

The petitioners seek to avoid the application of the *Wainwright* "cause and prejudice" standard by arguing that the trial court lacked subject matter jurisdiction. During the period of these indictments, article first, § 8, of the Connecticut constitution and General Statutes § 54-45 required a grand jury indictment for the crimes committed by these petitioners. The petitioners argue that because their indictments were obtained from unconstitutionally selected grand juries, the trial court lacked subject matter jurisdiction to prosecute them.

Subject matter jurisdiction "is the power to hear and determine cases of the general class to which the proceedings in question belong." *Reed* v. *Reincke,* 155 Conn. 591, 598, 236 A.2d 909 (1967). Subject matter jurisdiction cannot be waived or conferred by consent of the defendant. Id. If the allegedly unconstitutionally obtained indictments deprived the court of subject matter jurisdiction, we would have to dismiss the petitioners' convictions. *Vincenzo* v. *Warden,* 26 Conn. App. 132, 135, 599 A.2d 31 (1991).

A review of federal habeas corpus jurisprudence indicates that a claim of an unconstitutionally selected grand jury does not go to a court's subject matter jurisdiction. *Tollett* v. *Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973), held that an uncondi-

tional guilty plea made with the assistance of counsel functions as a waiver of all nonjurisdictional defects and prohibits subsequent claims of constitutional challenges to the pretrial proceedings. In *Tollett* v. *Henderson*, supra, 259, the state of Tennessee admitted that minorities were systematically excluded from grand juries at the time of the petitioner's grand jury indictment for murder. The Supreme Court later noted that the claim in *Tollett* did not go "to the very power of the State to bring the defendant into court to answer the charge brought against him." *Blackledge* v. *Perry*, 417 U.S. 21, 30, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974). The invalid indictment in *Tollett* "could have been 'cured' through a new indictment by a properly selected grand jury." Id.

Unlike *Tollett*, the state in this case is not conceding that the grand jury indictments involving these petitioners were unconstitutional. Had the petitioners, as required by Practice Book § 613, raised a challenge to the grand jury array during the pretrial proceedings, any possible defect could have been cured through a new indictment. As in *Tollett*, this claim is a constitutional challenge to pretrial proceedings. Here, the equal protection claim does not go to the state's power over the petitioners and the charged offenses.

The petitioners' reliance on *State* v. *Lewis*, 176 Conn. 270, 407 A.2d 955 (1978), to support their claim that the court lacks subject matter jurisdiction because of the alleged unconstitutional grand jury array is misplaced. After initially charging the defendant with robbery in the second degree, the state sought to add an additional charge accusing him of being a persistent felony offender. The state failed to obtain a grand jury indictment first even though Lewis faced the possibility of life imprisonment with the addition of the persistent felony offender charge. Id., 271. The defendant's

objection to this procedure was overruled. Id. The court examined the need for a grand jury indictment even though both sides failed to raise the issue in their briefs. Id. Because of the possibility of receiving a life sentence, the defendant had to be indicted by a grand jury. Id., 272.

*State* v. *Lewis,* supra, does not stand for the principle that an improperly selected grand jury indictment deprives the court of its subject matter jurisdiction. It was the absence of a grand jury indictment itself in *Lewis* that deprived the trial court of the power to sentence the defendant on the persistent felony offender count. The failure to obtain an indictment when required by the state constitution and by statute is not a defect that can be waived by the defendant. In contrast to the claim concerning the lack of a grand jury indictment, a claim challenging the selection of grand jurors had to be filed within five days after the indictment or the claim was waived according to Practice Book § 613.[9] If a challenge to a grand jury array went to the court's subject matter jurisdiction, the rules of practice could not provide that such challenge is waived if not made within five days. Here, all of the petitioners were in fact indicted by a grand jury as required by the Connecticut constitution and General Statutes § 54-45. The petitioners' equal protection challenges relate to the composition of the grand jury and not to the grand jury's underlying power to issue an indictment. Any defect in the indictment should have been raised during the pretrial proceedings.

The reasoning of *United States* v. *Macklin,* 523 F.2d 193 (2d Cir. 1975), further supports our holding that the alleged improper selection of a grand jury does not affect the court's subject matter jurisdiction. After initially pleading guilty, the defendant sought a dismissal

---

[9] See footnote 6, supra.

because the grand jury issued its indictment after its term had expired. Id., 194. The government argued that although the indictment was issued by a grand jury whose term had expired, dismissal was not warranted. The government argued on the basis of *Tollett* that the defendant's claim was similar to a constitutional challenge to the grand jury's composition and, thus, the court still retained its jurisdiction over him. Id., 196–97.

The court of appeals rejected this argument concluding that cases such as *Tollett* "dealt with grand juries that formally existed. . . . [T]he composition of the juries was challenged . . . on the ground that the racial composition of the otherwise legally constituted grand jury was not in conformity with the constitutional requirement." Id., 197. There was a distinction between constitutional claims concerning the racial composition of a grand jury and claims involving the grand jury's power to issue a valid indictment. The court held that an indictment issued after the grand jury's term had expired constitutes a defect "which renders the grand jury's actions void ab initio." Id. As in *State* v. *Lewis,* supra, it is the absence of an indictment or an indictment from grand jurors who lack the power to issue one that deprives the court of its subject matter jurisdiction and not a constitutional challenge to the selection or composition of a grand jury. Thus, we find that the petitioners' equal protection challenge does not go to the court's subject matter jurisdiction to hear this action.

We reject the petitioners' argument that the trial court lacked subject matter jurisdiction because of the allegedly unconstitutional grand jury selections. Under Practice Book § 810, the lack of subject matter jurisdiction could be raised by the court even if it was not raised by the accused. We find support for our decision in *Johnson* v. *Commissioner,* supra, which involved

a similar equal protection claim. The Supreme Court did not find that the equal protection challenge affected the court's subject matter jurisdiction over the petitioners. If the court lacked subject matter jurisdiction because of the unconstitutional indictments, the Supreme Court would have had to dismiss the charges against the petitioners in *Johnson* and could not have refused to review the merits of the equal protection claim by finding a failure to show cause for the petitioners' procedural default of not challenging the grand jury arrays.

## III

All of the petitioners seek to set aside their convictions claiming that their trial attorneys' failure to challenge the grand jury selection process amounted to ineffective assistance of counsel in violation of the federal and state constitutions.

The habeas court applied the standard established in *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to determine whether the petitioners who did not plead guilty received effective assistance of counsel. The court held that the petitioners failed to establish that their counsels' performances were deficient and that they were prejudiced because of a failure to pursue challenges to the grand jury array. The court found that because all attempts to challenge the constitutionality of § 51-220 were unsuccessful as of 1981, and because any successful challenge would only have delayed the petitioners' prosecution by forcing the state to obtain a new grand jury indictment, counsel's performance was not deficient. The court also found that the petitioners failed to show that they were prejudiced because any defects in the indictments could have been cured by new indictments.

The *Strickland* standard was applied by our Supreme Court in *Johnson* v. *Commissioner,* supra, 425, where the court held that counsel's failure to challenge grand and petit jury arrays did not constitute ineffective assistance of counsel. The court noted that "it is debatable whether a challenge to the array, even if successful, must inevitably redound to the benefit of a criminal defendant. Unlike an acquittal, which is dispositive of the charge, a successful challenge to the array simply delays a final resolution of the case in the trial court while a different jury array is assembled and, when a defendant has not been released on bond, often may result in prolonged incarceration of defendants ultimately found not guilty. Furthermore, upon observation of the members of a grand jury . . . counsel may well be satisfied that it contains as many minority jurors as needed to satisfy equal protection . . . standards, and possibly more than required." Id., 427.

Here, the petitioners have failed to distinguish their cases from the case of *Johnson* v. *Commissioner,* supra. On the basis of that case, we affirm the decision of the habeas court concerning the ineffective assistance of counsel claim.

The judgments are affirmed.

In this opinion the other judges concurred.