[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The petitioner in this matter, Lawrence Smith, has brought four petitions for writs of habeas corpus to this court. The first petition, dated December 29, 1989, claims that he was denied effective assistance of counsel in a matter entitled Statev. Smith, CR 89-369551 ("kidnapping trial") tried before the Honorable Thomas Corngan in September of 1989. At that trial the petitioner was found guilty of kidnapping in the first degree, robbery in the third degree, larceny in the second degree and assault in the third degree. Charges of robbery in the second degree were dismissed by the court and the petitioner was found not guilty of sexual assault in the first degree § 53a-70 (a) CT Page 3128 and attempt to commit sexual assault § 53a-499 (a)(2). A total effective sentence of thirty five years was imposed by the court.
The second petition dated June 25, 1991 claims ineffective assistance of appellate counsel on the appeal taken from the kidnapping trial ("kidnapping appeal"). The appeal resulted in the affirmation of the verdict and judgment, State v. Smith,219 Conn. 160, 592 A.2d 382 (1991).
In the third petition, dated August 21, 1990, the petitioner also claims he was denied ineffective assistance of trial counsel in a matter entitled State v. Smith, CR 89-55953. After a jury trial before the Honorable Joseph J. Purtill, the petitioner was convicted of conspiracy to commit larceny in the first degree, larceny in the first degree, three counts of larceny in the second degree and two counts of larceny in the third degree ("larceny trial"). The petitioner was sentenced to an effective sentence of sixteen years to be served consecutive to the sentence imposed in the kidnapping trial.
The fourth petition for writ of habeas corpus was filed on September 12, 1991 claiming ineffective assistance of counsel on petitioner's appeal of his conviction in his larceny trial. That appeal ("larceny appeal") appears at 26 Conn. App. 279,600 A.2d 1036 (1991) and it affirmed the verdict and judgment.
The four petitions were consolidated and a four count amended petition was filed on June 20, 1996. A trial was held on the consolidated petition on March 25, 1997.
 I.
All four consolidated habeas claims allege ineffective assistance of counsel. The petitioner's right to effective assistance of counsel is rooted in the sixth andfourteenth amendments to the U.S. Constitution as well as Article First, Section 8 of the Connecticut Constitution. State v. Mason,186 Conn. 574, 577, 442 A.2d 1335 (1982). In order for the petitioner to prevail on his claim of ineffective assistance, he has the burden of proving that his counsel's performance was deficient and that counsel's deficient performance actually prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g denied, 467 U.S. 1267,104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Copas v. Commissioner ofCT Page 3129Correction, 234 Conn. 139, 154, 662 A.2d 718 (1995).
In order to prevail on his claims of ineffective assistance of counsel, the petitioner must satisfy his burden of proof on a two-prong test established by the U.S. Supreme Court. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that `counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the defendant makes both showings, it cannot be said that the conviction . . . . resulted from a breakdown in the adversary process that renders the result unreliable." Stricklandv. Washington, supra, 466 U.S. 687.
In deciding a habeas petition the court "must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have an isolated trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland v. Washington, supra,466 U.S. 695-96.
Furthermore, the Strickland Court opined that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it's all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . . (Citation omitted.) A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the CT Page 3130 time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy' . . . . (Citation omitted.)
"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington,
supra, 466 U.S. 689-90; Quintana v. Warden, 220 Conn. 1, 5,593 A.2d 964 (1991); Williams v. Warden, 217 Conn. 419, 423,586 A.2d 582 (1991); Jeffrey v. Commissioner of Correction,36 Conn. App. 216, 220, 650 A.2d 602 (1994).
The second prong of the Strickland test requires the petitioner to demonstrate that he was prejudiced as a result of the ineffective assistance by his counsel. The petitioner, in order to sustain his burden with regard to this second prong, must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, supra, 466 U.S. 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." Id., 693. Rather a successful petitioner must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Copas v.Commissioner of Correction, supra, 234 Conn. 151. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra, 694. "When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."Fair v. Warden 211 Conn. 398, 408, 559 A.2d 1094 (1989); Jeffreyv. Commissioner of Correction, supra, 36 Conn. App. 216, 220-21.
Further, a habeas court need not decide the deficiency of trial counsel's performance if consideration of the prejudice prong of the Strickland test will be dispositive of the claim of ineffectiveness. Aillon v. Meachum, 211 Conn. 352, 362,559 A.2d 206 (1989). CT Page 3131
II. Kidnapping Trial
Petitioner alleges that trial counsel Julian Schlesinger, failed to render him effective assistance of counsel during the kidnapping trial. Before addressing the multiple claims of ineffective assistance of counsel, a review of the trial court proceeding and the facts that the jury could reasonably have found leading to the petitioner's conviction will be summarized. At the kidnapping trial the state introduced evidence that on July 21, 1989 the defendant entered the Pump House Gallery ("Gallery") in Bushnell Park in Hartford. The victim was employed in the Gallery as a receptionist. The petitioner entered the gallery and held a brief discussion with two other visitors to the Gallery. The visitors, Gertrude Blanks and her son, Leonard Blanks, had lived in the same neighborhood as the petitioner, and the son knew the petitioner. At trial, Gertrude Blanks and her son testified, and both placed the petitioner inside the Gallery on the date of the crime. Shortly thereafter, the Blanks left the Gallery and sat on a fence near the Gallery to discuss the art work they had just viewed. A short while later the petitioner left the Gallery and returned with another man. Gertrude Blanks testified that she saw the petitioner reenter the Gallery, with this other man. This testimony was consistent with the victim's testimony concerning the events of that day. Leonard Blanks was asked to identify the person whom he had seen at the Gallery that day by the police when questioned at his home. He identified the petitioner as that person. The victim testified that the petitioner, after reentering the Gallery, made her uneasy and, when she left her desk to walk towards the door, the petitioner grabbed her left arm, dragged her into the restroom, threatened to kill her, punched her numerous times in the head, pushed her into the stall, ordered her to "get naked", and started unbuckling her belt. Her testimony further indicated that she was facing the petitioner at that time. In an effort to divert his attention she offered him her money, her watch and jewelry. After ripping her watch off her wrist and taking her earrings, the petitioner told her not go anywhere while he went to get her wallet at the reception desk. The petitioner, at that point, left the restroom and the victim locked the door behind him. The victim did not see the petitioner again and never recovered her possessions. The only other person in the Gallery at the time of the attack was the other man that Gertrude Blanks testified accompanied the petitioner when he reentered the Gallery. Subsequently, the victim was questioned by the police and CT Page 3132 identified the petitioner from a photo array. That photo array and identification was the subject of a hearing on a motion to suppress, which was conducted just prior to the commencement of the testimony in the trial. The motion was denied.
At the kidnapping trial the petitioner testified that he was questioned by the police concerning the events that occurred at Bushnell Park on July 21, 1989. He denied being there and testified that he told the police he was at home. (Transcript of 9/28/89 Kidnapping Trial ["Petitioner's Exhibit A"], pp. 284-85). The petitioner also testified to having used his brother's name and birth date in the past (Petitioner's Exhibit A, p. 291). He also admitted at the kidnapping trial to having three prior felony convictions and was evasive with respect to a fourth conviction. Additionally, he admitted to having given the police a false name and birth date. He was also unable to recall the last names or addresses of co-workers that he stated he was with prior to the Bushnell Park assault and kidnapping. (Petitioner's Exhibit A, p. 293.)
 III. Petitioner's Claims Re: Kidnapping Trial
The petitioner claims that trial counsel rendered ineffective assistance at trial in one or more of the following ways:
1. Trial counsel failed to adequately pursue a line of questioning that would have allowed the petitioner to explain his false statement and further failed to take exception to the court's instruction to the jury concerning consciousness of guilt.
2. Trial counsel failed to seek a recess for the petitioner to regain his composure after a statement made by the state's attorney, out of the presence of the jury, upset the petitioner.
3. Trial counsel failed to investigate and to call Kenneth Slater as a witness for the petitioner and failed to adequately cross-examine Gertrude Blanks with respect to the petitioner's reentering of the Gallery.
4. Trial counsel failed to object to the court's "marshaling of evidence" in favor of the state in its jury instructions.
5. Trial counsel failed to take any action to excuse the panel from which the jury was selected after an emotional outburst CT Page 3133 by a member of that panel.
6. Trial counsel failed to call the petitioner's parole officer to testify to the fact that one of the conditions of the petitioner's parole was a restriction on the use of alcohol.
With respect to the petitioner's first claim, after having reviewed the transcript of the kidnapping trial and having heard the testimony at the habeas hearing, the court is unconvinced that, at the time of trial, the petitioner did not have an adequate opportunity to explain his statement. The petitioner testified at the habeas hearing that "[t]he police asked me was I at a rape in Bushnell Park on July the 21st. My answer was no. If he asked me if I was at Bushnell Park on that particular day, I would have told him, Yeah, but I wasn't at no rape." (Transcript of 3/25/97 Habeas Hearing ["Tr."], p. 18). When petitioner's habeas counsel cross-examined trial counsel with respect to the petitioner's statement at trial on this subject, trial counsel stated that he reviewed the petitioner's testimony with him prior to trial and that the petitioner was fearful of being a suspect because he was on parole.[1]
Trial counsel's recollection of the reason why the petitioner gave a false statement to the police is consistent with the petitioner's testimony at the kidnapping trial. The petitioner is now suggesting that his statement to the police was not in fact false, but a misunderstanding. He states that if asked if he was at Bushnell Park he would have responded affirmatively. The petitioner on redirect examination at the kidnapping trial testified that "I spoke to Detective Lucas and I told him that I wasn't in the park on that date . . . ." (Petitioner's Exhibit A, p. 303). This testimony at the kidnapping trial contradicts the explanation the petitioner gave at the habeas hearing. The court finds the petitioner's testimony on this issue lacks credibility. Trial counsel adequately brought out at trial the fact that the petitioner's false statement to the police was made because the petitioner was on parole and therefore fearful. (Petitioner's Exhibit A, p. 285).[2]
Petitioner also takes issue with the trial court's charge on consciousness of guilt and the failure of trial counsel to take exception to it. This issue was raised on appeal and the Supreme Court declined to review the alleged error because of trial counsel's failure to take an exception to the charge. See Statev. Smith, supra, 219 Conn. 166. CT Page 3134
Having reviewed the consciousness of guilt charge given by the trial court, this court finds no error in the charge nor that it was inappropriate for the charge to be given. The petitioner, therefore, has not met his burden of proof on the first prong of the Strickland test. Assuming, arguendo, that the charge to the jury was in error, the petitioner would still not meet his burden on the prejudice prong of the Strickland test. The evidence presented by the state was compelling. Two witnesses placed the defendant at the scene and one of these witnesses had known the petitioner for many years as they had grown up in the same neighborhood. The victim identified the petitioner as her assailant from a photo array and was certain and unequivocating in her identification. The injuries suffered by the victim were significant and documented by photographs thus attesting to the actual occurrence of an assault. From the totality of the evidence presented at trial, the court finds that the petitioner has failed to establish a reasonable probability that the result of the trial would have been different but for failure to object to the consciousness of guilt charge. Levine v. Manson,195 Conn. 636, 640, 490 A.2d 82 (1985). A reasonable probability is a probability sufficient to undermine confidence in the verdict.Bunkley v. Commissioner of Correction, 222 Conn. 444, 454,610 A.2d 598 (1992).
The second allegation of inadequate representation in the kidnapping trial by counsel involves the petitioner's claim that counsel should have sought a recess to allow the petitioner to regain his composure after certain statements made by the state's attorney upset the petitioner while he was on the stand.[3]
Assuming, arguendo, that the petitioner was upset by the exchange outside the presence of the jury this claim can not be taken seriously. The transcript of the trial reveals that after the jury reentered the courtroom the only additional statement made by the petitioner was the following:
The Court: You may step down.
The Witness: Thank you, Your Honor.
(Petitioner's Exhibit A, p. 309)
It is hard to imagine how the jury could have drawn any inference based upon the petitioner's claimed lack of composure during this exchange. CT Page 3135
The petitioner's third claim is that trial counsel failed to call Kenneth Slater ("Slater") as a witness and further he failed to adequately cross-examine Gertrude Blanks about her testimony concerning her witnessing the petitioner reentering the Gallery. Trial counsel testified at the habeas hearing that he attempted to subpoena Slater by sending an investigator to the Regional Market in Hartford where the petitioner stated that Slater worked. Despite the investigator's attempts to serve Slater on either three or four separate occasions he could not locate him. This effort was confirmed by the petitioner's testimony at the habeas hearing (Tr., p. 23). The court finds that the petitioner has failed to show that trial counsel failed to take all reasonable steps to attempt to produce Slater for trial and has not met his burden of proof demonstrating the inadequacy of counsel's efforts or any resulting prejudice as defined by the court in Strickland.
As to trial counsel's cross-examination of Gertrude Blanks with respect to her testimony concerning the petitioner's reentering the Gallery, the petitioner offers no specific line of questioning that he would expect counsel to have pursued. It is certainly reasonable trial strategy for trial counsel not to inquire too deeply into Gertrude Blanks' testimony concerning the petitioner's reentering the Gallery. The state offered evidence that the fence upon which Gertrude Blanks was sitting was twenty feet from the entrance to the Gallery, (Tr., p. 57) she was farsighted (Tr., p. 53) and at the kidnapping trial was able to describe the other man that entered the Gallery as well as identify the petitioner. It was certainly a reasonable decision by trial counsel to forego further inquiry which could potentially have reinforced in the jury's mind the strength of the observation already elicited from Gertrude Blanks on direct examination. The court does not find that the cross examination of this witness by trial counsel was inadequate or that he did not employ reasonable or sound trial strategy. The court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) Levine v.Manson, supra, 195 Conn. 640.
The petitioner's fourth claim is that trial counsel failed to object to the "marshaling of evidence" by the trial court in CT Page 3136 favor of the state in its final instructions to the jury. The petitioner failed at his habeas trial to specify with any preciseness what error he believed existed in the trial court's instructions to the jury. Trial counsel's only comment on the final instructions was that "I didn't think there was any reversible error in the jury instructions." (Tr., p. 45). After fully reviewing the jury instructions, indeed the entire trial transcript, this court agrees. The petitioner has failed to satisfy either prong of the Strickland standard for determining ineffective assistance of counsel.
The petitioner's fifth claim alleges that trial counsel failed to seek the disqualification of an entire panel of jurors when during the course of the voir dire process one of the jurors became emotional in front of the panel. Further, he claims that while the individual juror was excused she was hugged and comforted by other panelists. No other evidence or testimony was offered on this issue. No evidence of the effect or impact it may have had on other panelists nor any details of the extent of the disruption, if indeed there was any, was offered. In fact the only other statement regarding this issue was the testimony of the petitioner in response to his counsel's question:
 Q. Okay. Did Attorney Schlesinger make any attempt to excuse the panel as a whole?
A. Never.
 Q. Did you in particular ask him to do anything towards that issue?
 A. Myself I was — I just set back and let him do his job basically. I interjected where I thought was necessary, but I thought at that particular time he was doing a good job.
(Tr., p. 20).
The court finds that the petitioner has failed to establish that the claimed disruption occurred, and, if it did occur, that it was so significant as to rise to the level that trial counsel or his client should have expressed concern to the trial court.[4]
The final claim with respect to the kidnapping trial relates to the petitioner's claim that trial counsel failed to call his CT Page 3137 parole officer to testify that a restriction on the petitioner's parole was that he not use alcohol. The only testimony at the habeas hearing regarding this issue was the following exchange between petitioner's counsel and trial counsel:
 Q. Did you make any attempts to call anyone from the parole office concerning the conditions of Mr. Smith's parole?
A. No.
 Q. Okay. Did Mr. Smith raise that with you as an issue on the grounds that a condition of his parole was that he was not supposed to drink alcohol?
 A. I know we discussed the issue. I don't recall Larry asking me to subpoena anyone from the parole office, and based upon my discussions and my feelings as a trial counsel on the issue, I doubt I would have done that.
(Tr., pp. 44-45).
Petitioner has failed to establish that the condition of parole that he not use alcohol was in fact a condition; that the failure of trial counsel to bring the issue up through a parole officer was an unreasonable tactical decision; or that the failure to bring this to the jury's attention would taint the entire proceeding thus casting doubt on the reliability of the outcome. The victim and the petitioner both testified that the petitioner was at the Gallery on the day in question. The victim testified that she detected an odor of alcohol about the person of the petitioner when he was standing before her in the Gallery. The mere fact that it was a condition of the petitioner's parole that he not use alcohol would have little weight on the issue of whether he was abiding by that term at all times. It would have even less influence with the jury on the larger issue of his guilt in light of the fact that he testified to his presence in the Gallery and to holding a conversation with the victim.
After review of all the alleged deficiencies both individually and cumulatively in trial counsel's representation of the petitioner, the court finds that the petitioner has failed "to establish a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) Bunkley v.Commissioner of Correction, supra, 222 Conn. 446. CT Page 3138
IV. Kidnapping Appeal
Petitioner alleges that appellate counsel, Attorney Elizabeth Inkster, failed to adequately represent him on appeal of his conviction in the kidnapping trial. Specifically he raises three issues. First, petitioner claims appellate counsel failed to appeal the denial of the motion in limine; second, failed to appeal the denial of the petitioner's motion to suppress; and, third, failed to challenge the lack of minorities on the jury. Each issue will be considered separately.
The petitioner's first claim is that appellate counsel should have appealed the trial court's denial of his motion in limine. The motion sought to exclude certain felony convictions of the petitioner that occurred more than ten years prior to the incident in question and sought to keep the state's attorney from introducing the statutory title of the crime. Despite the court's ruling in favor of the state, the state neither introduced into evidence any convictions more than ten years old, and, of the felony convictions that were introduced the state described them only as "felonies." Thus, this is a non-issue. Petitioner also claims that appellate counsel was ineffective because she failed to appeal the admission of prior convictions in which the petitioner had pleaded guilty, rather than having been convicted after a trial. This court finds no support for the proposition that a defendant's voluntary plea of guilty is any less reliable for impeachment purposes than his conviction after a trial. Appellate counsel did not raise this issue as it too was a non-issue.
The second claim by the petitioner is that appellate counsel failed to attack on appeal the photographic identification by the victim of the petitioner. On September 27, 1989, the trial court heard testimony and arguments on the petitioner's motion to suppress the photographic array used by the Hartford police to determine whether the victim could identify her assailant. The only issue with respect to the array was whether the array was unreasonably suggestive. Specifically, the petitioner's claim is that eight photographs were presented to the victim, seven of which contained images of individuals either wearing solid colored shirts or were bare chested. Only the petitioner's photograph showed an image of an individual wearing a multi-colored or pattered shirt. At the trial, the victim testified that in viewing the photo array she was focused principally on the face and that the color of the clothing was not significant. The CT Page 3139 clothing that the petitioner was wearing in the photograph did not match the description the victim had given the police of the clothing that her attacker was wearing at the time of the assault. Despite trial counsel's thorough examination of witnesses who testified during the motion to suppress, trial counsel was unable to raise any significant doubt as to the reliability of the identification. Appellate counsel testified that she considered this issue on appeal but did not raise it. Further, she testified that there were no issues that she felt she should have raised on appeal that she didn't. This court agrees. Appellate counsel is not required to raise every conceivable issue and the decision not to raise this issue was not erroneous. The petitioner has failed to sustain his burden that appellate counsel's representation was inadequate.
The final claim by the petitioner is that appellate counsel failed to raise the issue of under representation of minority members on the jury. The trial transcript (Petitioner's Exhibit A) is devoid of any mention of this subject and the only evidence before this court is the following testimony of the petitioner at the habeas hearing on his petition:
 Q. Was there any issue about under representation by minorities in the jury panel that you asked her to raise?
 A. Yeah, I didn't ask her to raise that. It was never raised in the trial. It was never raised in the trial court. I felt as though that the panel didn't have any minorities on it. As a matter of fact, had somebody from India or something. One lady there she was from India, or that's the only minority that was on that particular panel. I felt as though that we should address that at the trial court. It was never addressed there, so I didn't think that would be, could be addressed on appeal.[5] (Tr., pp. 29-30.)
Our Supreme Court addressed the habeas claim of ineffective assistance of counsel for counsel's failure to challenge the racial component of the jury array, in Johnson v. Commissioner,218 Conn. 403, 424, 589 A.2d 1214 (1991). The court applied the two-prong Strickland test to this claim, requiring each petitioner to show that counsel's performance was deficient and such deficiency prejudiced the petitioner. Johnson v.Commissioner. supra, 218 Conn. 424. The court noted that the petitioners were relying on hindsight provided by the decision inAlston v. Manson, 791 F.2d (2d. Cir. 1986), cert. denied, CT Page 3140479 U.S. 1084, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987), in which the defense attorneys were successful in their equal protection challenge to General Statutes § 51-220, because of its impact on minority representations of juries. Johnson v. Commissioner,
supra, 427. The court said "[e]ven with the hindsight provided byAlston, it is debatable whether a challenge to the array, even if successful, must inevitably redound to the benefit of a criminal defendant. Unlike an acquittal, which is dispositive of the charge, a successful challenge to the array simply delays a final resolution of the case in the trial court . . . ." Id. The court also noted that counsel may see enough minority members in the panel to be satisfied that the panel satisfies the defendant's constitutional rights. Id. In addition, the court said, it is not clear that the professional norm would demand that in every case counsel should expend the resources necessary to pursue a challenge to the array. Id. The court concluded that the failure to challenge the jury array did not constitute a violation of theStrickland standard for deficient performance, and affirmed the habeas court's rejection of the claim without considering the prejudice requirement of the Strickland test. See Parker v.Commissioner of Correction, 27 Conn. App. 675, 688, 610 A.2d 1305
(1992) (rejects ineffective assistance of counsel claim for failure to challenge jury array).
The petitioner has failed to establish by sufficient evidence the fact that there was under-representation of minorities on the jury array as there was no evidence presented as to the actual composition of the panel based upon observation or based upon actual records. Furthermore, no evidence was presented that trial counsel's or appellate counsel's failure to raise a challenge to the composition at either the trial or appellate stage amounted to ineffective assistance of counsel. Trial counsel could reasonably have believed that since the decision inAlston v. Manson, supra, 791 F.2d 255, that the problem with respect to the selection of panelists had been remedied.
V. Larceny Trial
Petitioner has alleged that Robert Britt, his trial counsel, rendered ineffective assistance at his trial on multiple larceny counts and conspiracy to commit larceny. The facts adduced at trial by the state leading to the convictions which the jury could have reasonably relied upon will be briefly summarized.
The defendant was charged in connection with his sale of six CT Page 3141 stolen motor vehicles to an undercover sting operation conducted by a consortium of police departments. Each of the transactions was recorded on videotape and viewed by the jury. In addition, the petitioner testified on his own behalf that he intended, by selling the motor vehicles to the police, to return the stolen property to their rightful owners. The petitioner sought to take advantage of the exception in the larceny statute that does not make it a crime to possess stolen property if "the property is received, retained, or disposed of with purpose to restore it to the owner." General Statutes § 52a-119 (8). The petitioner testified that he knew the participants in the sting operation were police officers.
At trial, evidence was also introduced through the owners of the vehicles as well as through an expert witness as to the value of each of the motor vehicles.
VI. Petitioner's Claims Re: Larceny Trial
The petitioner claims that he received ineffective assistance of counsel at his trial in one or more of the following ways:
 1. Trial counsel failed to seek to suppress a videotape showing the petitioner engaged in certain dealings with undercover police officers.
 2. Trial counsel failed adequately to cross-examine witnesses or display to them the videotape previously described.
 3. Trial counsel failed to request charges regarding lesser included offenses.
Petitioner's first claim that his trial counsel failed to seek to suppress the videotape evidence showing the petitioner dealing with the police is easily disposed of on various grounds. At the habeas hearing no evidence was offered to suggest any possible theory that trial counsel may have employed to suppress the videotapes. Additionally, the entire thrust of the petitioner's case was not to deny any of the acts caught on tape but rather to admit them and make the legal argument that this was evidence of the petitioner's efforts to return stolen property. Finally, an important part of trial counsel's strategy, as is demonstrated by a review of his summation to the jury, was to have the jury review the videotape to determine whether or not the officers who were involved in the sting operation could have CT Page 3142 been identified as police officers through their mannerisms, dress and language. The entire thrust of the defense was that the petitioner knew the police officers were police officers. The petitioner's claim that trial counsel erred by not seeking to suppress the tapes is disingenuous. This action by trial counsel could clearly be considered sound trial strategy in light of the circumstances attendant at the time of trial. Levine v. Manson,
supra, 195 Conn. 640.
As an alternative claim, the petitioner suggests that the videotapes could have been used more effectively in cross-examining witnesses. How trial counsel could have been any more effective was not demonstrated or even suggested at the habeas hearing and the petitioner has therefore not met his burden of proof on either prong of the Strickland test.
The petitioner's final claim is that defense counsel failed to ask for any lesser included offenses in the trial court's charge to the jury. At the habeas hearing, trial counsel's only recollection when questioned as to why this was not requested was that based upon the theory of the defense seeking such a charge would have been inconsistent with the defense theory of the case. At trial the value of each vehicle was testified to by the individual owners of the vehicles and an expert witness. No other valuation testimony was offered. While a charge on lesser included offenses could have been requested, no evidence of any significance was offered that would have allowed the jury to reasonably consider these lesser included offenses.[6]
After considering all of the claims of the petitioner and their cumulative impact, the court finds that the petitioner has failed to establish that trial counsel's performance was constitutionally deficient or that the petitioner has demonstrated prejudice of such magnitude as to render the trial as a whole fundamentally unfair. United States v. Sanchez,790 F.2d 245, 257 (2d Cir.), cert. denied, 479 U.S. 989,107 S.Ct. 584, 93 L.Ed.2d 587 (1986).
VII. Larceny Appeal
The only allegation by the petitioner with respect to appellate counsel's, Attorney Lauren Weisfeld, performance on the appeal of his larceny conviction was appellate counsel's failure to file a reply brief The petitioner at the habeas hearing disposed of this claim on direct examination in response to the CT Page 3143 following:
 Q. Do you feel it would have been helpful to your appeal had she followed through with that (filing a reply brief)?
 A. I don't know because as I stated, it couldn't have hurt, but as I stated, I didn't feel as though the appeal would be successful at the outset based upon the issue that she was dealing with. They was already heard by the Court on prior occasions, and I — and ruled against, so it was just like beating a dead horse, and I was — those were the type of issues that I was explaining to her. I had read these particular cases myself I knew about them, and I explained to her, I said there's no way we going to win. They just ruled against that.
(Tr., p. 38)
Appellate counsel testified that there was nothing contained in the state's brief that either warranted a reply brief or that could not be responded to at oral argument. Further, she testified to having the appropriate time to work on the matter as habeas matters are assigned to counsel one case at a time. There is no merit to the petitioner's claim.
For the reasons set forth herein the consolidated petition is dismissed.
Zarella, J.