## TERRY ANN WILLIAMS *v.* SHAWMUT MORTGAGE COMPANY ET AL.
### (AC 16854)

Foti, Schaller and Spear, Js.

Argued January 22—officially released June 23, 1998

*Philip L. Steele,* for the appellant (plaintiff).

*Kevin D. O'Leary,* with whom, on the brief, was *Richard Voigt* for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Terry Ann Williams, appeals from the decision of the workers' compensation commissioner (commissioner) dismissing her wrongful discharge claim against the defendant Shawmut Mortgage Company (Shawmut).[1] The plaintiff filed her claim

---

[1] In addition to the named defendant, Hartford Insurance Group, as insurer, is also a defendant. Shawmut is the successor to Connecticut National Bank, against which the original workers' compensation claim was made. We refer in this opinion to Shawmut as the defendant.

pursuant to General Statutes § 31-290a,[2] and appeals directly to this court pursuant to General Statutes § 31-290a (b).[3] The dispositive issue on appeal is whether the commissioner properly determined that he lacked subject matter jurisdiction to hear the matter.[4] We agree with the plaintiff and reverse the judgment of the commissioner.

The following facts are relevant to a resolution of this appeal. The plaintiff began her employment with the defendant in October, 1979, and worked in a variety of supervisory office positions. The plaintiff last worked for the defendant in January, 1991, when she left work allegedly suffering from depression and other psychiatric conditions caused by ongoing stress and harassment

[2] General Statutes § 31-290a (a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

[3] General Statutes § 31-290a (b) provides in relevant part: "Any employee who is so discharged or discriminated against may . . . (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. . . . Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

[4] The plaintiff makes five other claims on appeal. The plaintiff claims that the commissioner improperly determined that (1) the plaintiff was terminated from employment prior to entering into a stipulated agreement with the defendant to settle her workers' compensation claim for repetitive trauma and stress, (2) the stipulated agreement barred the plaintiff from filing the present retaliatory termination claim pursuant to § 31-290a, (3) a purported agreement that was not executed was not admissible into evidence and (4) the plaintiff was not allowed discovery from the defendant at the hearing. In view of our disposition of the principal issue in this appeal, we need not address these claims because we cannot say that they are likely to occur on remand. See *State* v. *Arroyo*, 180 Conn. 171, 181–82, 429 A.2d 457 (1980). The plaintiff's fifth claim is that the commissioner improperly relied on *Rondini* v. *Tectonic Industries*, 10 Conn. Workers' Comp. Rev. Op. 210 (1992), in dismissing her claim.

Finally, in its appellate brief, the defendant claims that the plaintiff's appeal to this court is improper because she failed to file a motion to correct with the commissioner. Because the defendant raises this issue for the first

at work. In February, 1991, the plaintiff filed a claim for compensation under the Connecticut Workers' Compensation Act, General Statutes § 31-275 et seq. At that time, she also began seeing Marvin Zelman, a psychiatrist, for the treatment of her depression.

In February and March, 1991, Zelman reported to the defendant that the plaintiff was unable to return to work because of her depression. In April, 1991, Zelman told the defendant that the plaintiff would be able to return to work if she was transferred to a new division. Between April and July, 1991, the plaintiff and the defendant discussed that possibility, but no accord was reached regarding a suitable position. In August, 1991, the plaintiff began receiving disability benefits from the defendant. The plaintiff told the defendant's rehabilitation consultant that she was enrolled in computer classes and wanted to be contacted for future employment with the defendant in May, 1992, upon completion of her classes. She had not heard from the defendant when, in November, 1992, she accepted employment as a full-time secretary, purportedly on a temporary basis, at Colt's Manufacturing Company, Inc., (Colt's) receiving a lower salary than that she had earned while working for the defendant. The plaintiff notified the defendant of her employment at Colt's and stopped receiving disability benefits in January, 1993.

In January and April, 1993, formal hearings were held on the plaintiff's claim. The parties agreed to settle the claim and entered into a stipulation. Under the terms of the stipulation, the defendant paid the plaintiff $17,000, in addition to paying the plaintiff's outstanding medical bills, in settlement of all past, present and future workers' compensation claims against the defendant arising from the alleged incidents of harassment.[5]

time in its appellate brief, we decline to review it here. See Practice Book (1998 Rev.) § 60-5.

[5] The fifth paragraph on page two of the stipulation provided: "The payment of said SEVENTEEN THOUSAND ($17,000.00) DOLLARS as aforesaid

The stipulation was signed by both parties and approved by the workers' compensation commission (commission) on July 7, 1993.

On August 3, 1993, the defendant sent the plaintiff a notice informing her of her right to continue receiving group health insurance benefits at her own expense. The notice stated that the "loss of [the plaintiff's group health insurance] coverage has occurred due to *Termination of Employment on 01/23/93*." (Emphasis added.) The plaintiff claims that this notice was the first notification she received that her employment with the defendant had been terminated.

On February 10, 1994, the plaintiff filed a wrongful discharge claim with the commission, alleging that the defendant had terminated her employment on August 3, 1993, in retaliation for her workers' compensation claim and in violation of § 31-290a. The claim was heard by the commissioner for the first district on September 24, 1996. At the commencement of the hearing, the defendant asserted that the commissioner lacked jurisdiction to hear the plaintiff's claim because her right to file such a claim had been waived in the July 7, 1993 stipulation. The commissioner allowed the hearing to continue, reserved his judgment on whether he had subject matter jurisdiction to hear the claim and directed the parties to submit briefs on the issue.

The plaintiff was the sole witness at the hearing. A substantial portion of her testimony on direct examination concerned the circumstances of her § 31-290a

shall be made and accepted as a full and final settlement of all compensation for said injuries, and for all results upon the claimant past, present and future, and for all claims for past, present and future medical, surgical, hospital and incidental expenses, and all compensation which may be due to anyone in case of the death of the claimant, to the end that the payment of such sum shall constitute a complete satisfaction of all claims due or to become due at any time in favor of anybody on account of the claimed injuries, or on account of any condition in any way resulting out of the said injuries, or on account of the death of the claimant."

claim. The plaintiff also testified that she had accepted the job at Colt's because she did not want to wait for an opening with the defendant, and sought to mitigate damages and to provide for herself until she could return. The plaintiff asserted that her temporary employment at Colt's did not constitute an abandonment of her employment with the defendant. She further testified that prior to receiving the defendant's August 3, 1993 health insurance notice, there had been no indication that the defendant had terminated her employment. The plaintiff did not offer any testimony regarding the parties' intentions in executing the stipulation, although she had initially stated that she would offer evidence on that issue.[6]

At the conclusion of the plaintiff's direct examination, the defendant began cross-examining the plaintiff. The commissioner, however, suspended the hearing for the day prior to the completion of cross-examination. There was no redirect examination. Although the commissioner stated that further testimony would be taken on a future date,[7] no additional hearings were scheduled in this matter. Instead, after receiving the parties' briefs on the jurisdictional issue, the commissioner dismissed the claim, concluding that he had no jurisdiction to hear it. Nevertheless, the commissioner made several findings on the merits in granting the defendant's motion to dismiss. Specifically, the commissioner found that (1) the plaintiff's termination from the defendant's

---

[6] At the hearing, the following colloquy took place:

"The Commissioner: [W]hat I'm getting at is, was there something in the actions and words of the parties that occurred on July 7, 1993, in the way which would have relevance as to whether or not a wrongful discharge claim was intended to be included in this [stipulation]?

"[Plaintiff's Counsel]: Yes, yes, there will be evidence offered on that . . . ."

[7] At the conclusion of the hearing, the commissioner stated, "Okay, I think this is a good time to take a break. We'll suspend the taking of testimony, and *we'll have to reassign this.*" (Emphasis added.)

employment occurred on the date she began to work at Colt's, prior to the date of the stipulation, and (2) the stipulation *barred* the plaintiff from pursuing her § 31-290a claim against the defendant. This appeal by the plaintiff followed.

The plaintiff's principal claim on appeal is that the commissioner improperly dismissed her claim for lack of subject matter jurisdiction. We agree.

"Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) *Parker* v. *Commissioner of Correction*, 27 Conn. App. 675, 683, 610 A.2d 1305, cert. denied, 223 Conn. 909, 612 A.2d 57 (1992). "Administrative agencies [such as the workers' compensation commission] are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power . . . ." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996).

Section 31-290a (b) specifically provides that an employee who is wrongfully discharged for filing a workers' compensation claim against his employer may "file a complaint with the chairman of the Workers' Compensation Commission . . . ."[8] The commission, therefore, is competent to entertain the plaintiff's action because the legislature's enactment of § 31-290a created her cause of action and vested in the commission the jurisdiction to entertain it. See *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 425, 559 A.2d 1103 (1989).

Whether the stipulation should be interpreted as *barring* the plaintiff from filing a wrongful discharge claim is one of the issues to be decided by the commissioner.

---

[8] See footnote 3.

Regardless of the wording of the stipulation, it cannot deprive the commissioner of jurisdiction over the plaintiff's claim because "[s]ubject matter jurisdiction cannot be waived . . . by consent." Id., 424. Moreover, whether the stipulation should be interpreted to bar the plaintiff's action depends on whether the alleged violation of § 31-290a occurred prior to the time the stipulation was entered into and what the parties' intentions were regarding the scope of the stipulation. See *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 479–83, 650 A.2d 1240 (1994). These questions of fact must be decided on the merits after a full hearing in which both parties are accorded "the right to introduce evidence of those relevant and material facts which logically [tend] to prove the issues involved and [which are] not excluded by some rule of law." *Moran* v. *New York, N. H. & H. R. Co.*, 107 Conn. 454, 457, 140 A. 818 (1928); see *Berndston* v. *Annino*, 177 Conn. 41, 44, 411 A.2d 36 (1979); *Borkowski* v. *Sacheti*, 43 Conn. App. 294, 322, 682 A.2d 1095, cert. denied, 239 Conn. 945, 686 A.2d 120 (1996).

In the present case, the matter did not proceed to a full hearing on the merits. Nevertheless, in ruling on the defendant's motion to dismiss, the commissioner made two critical findings: (1) "the [plaintiff] was terminated from employment prior to the time that the stipulation was entered into when she began to work for another employer in December of 1992," and (2) in accordance with *Rondini* v. *Tectonic Industries*, 10 Conn. Workers' Comp. Rev. Op. 210 (1992), the "stipulation ended all rights arising from the [plaintiff's] workers' compensation claim." The commissioner concluded, citing *Rondini*, that he lacked subject matter jurisdiction to hear the plaintiff's claim.[9]

_____

[9] *Rondini* is factually distinguishable from this case because there was no dispute in *Rondini* that the plaintiff was fired prior to the time that the parties entered into the stipulation. Moreover, the compensation review board in *Rondini* incorrectly held that the preclusive effect of that stipulation

By deciding that he had no jurisdiction to consider the merits of the plaintiff's claim, the commissioner terminated the hearing process before deciding the issues on the merits. His findings as to the date of termination and the scope of coverage of the stipulation were made before the hearing was finished and before the parties rested.[10] The commissioner, therefore, made findings on the issues to be decided on their merits, and then decided that those findings compelled him to dismiss the claim because he lacked subject matter jurisdiction to decide the pertinent issues. In effect, the commissioner proceeded as if the mere *existence* of the stipulation denied him jurisdiction over the plaintiff's claim. In any case, we conclude that the commissioner did have jurisdiction to hear the claim pursuant to § 31-290a. Accordingly, we remand the matter to the workers' compensation commission for a hearing on the preclusive effect, if any, of the stipulation. If the stipulation is determined not to be preclusive, the commissioner should conduct a full hearing on the merits.

The decision of the workers' compensation commissioner is reversed and the matter is remanded to the commission for further proceedings.

In this opinion the other judges concurred.

deprived the commissioner of subject matter jurisdiction. For a more thorough discussion of this issue, see part I of this opinion.

