[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By her petition dated December 7, 1999, petitioner seeks a writ of habeas corpus. The petition alleges that the petitioner is serving a sentence of 50 years in the custody of respondent after her conviction of the crime of murder in violation of Connecticut General Statutes §53a-54a. By her petition, she claims that her imprisonment is illegal and violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution.
For reasons hereinafter stated, the petition is dismissed.
It is undisputed that petitioner is now serving a sentence imposed as a result of her conviction as alleged. State v. Tomasko, 238 Conn. 253, 254
(1996).
It also appears to be undisputed that Attorney Raymond Ganim represented petitioner in the defense of the murder charge. The evidence indicates that petitioner had known Attorney Ganim for many years. He had represented her in other matters and was retained to represent her on the murder charge. It is alleged in the petition that Attorney Ganim's representation of petitioner was so deficient as to deprive her of her constitutional right to the effective assistance of counsel. Specifically, it is alleged that Attorney Ganim failed to adequately CT Page 7493 communicate with petitioner, did not adequately rebut witnesses' testimony, failed to call necessary witnesses and did not effectively cross examine witnesses. It is also alleged that he used an inadequate diagram of the crime scene before the jury and that all of these failures prejudiced the petitioner.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." This right arises under the sixth and fourteenth amendments to the United States constitution" Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995). (Citations omitted.)
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, [s]he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, [s]he must establish not only that [her] counsel's performance was deficient, but as a result thereof, [s]he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that [her] counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to [her] conviction as to have deprived [her] of a fair trial." Id.
Petitioner appealed her conviction to the Supreme Court. In its decision, this court stated that the jury could reasonably find the following facts. In the reported decision, petitioner is referred to as defendant.
"On September 14, 1981, the defendant lived in Stratford with her CT Page 7494 husband, the victim, and her daughter, Suzette Meyer. The defendant and the victim shared a history of marital strife. On the night of the murder, the defendant and the victim were arguing because the victim had been arrested for driving an unregistered motor vehicle, and the victim had accused the defendant of having informed the police. In the course of the argument, the defendant threw a beer bottle at the victim, who had been drinking. Meyer, who was sitting at the kitchen table across from the victim, was looking down when she heard a loud noise. When Meyer looked up, she saw that the defendant was standing near the doorway holding a small handgun, and that the victim was slumped in his seat at the kitchen table. The victim died from a single gunshot wound to the back of the head.
Although Meyer did not actually see the defendant pull the trigger, she testified that the defendant had been moving around during the course of the argument and, at one point, had entered Meyer's bedroom. Meyer and the victim's son both testified that the defendant customarily carried the handgun in her pocketbook, which she normally kept in Meyer's bedroom.
After the shooting, the defendant held the gun to Meyer's head and told her to help clean up the blood from the floor. While Meyer was cleaning the floor, the defendant dragged the victim's body out the back door and into the yard. Meyer then assisted the defendant in lifting the victim's body into a pickup truck. Thereafter, the defendant, with Meyer as a passenger, began driving the pickup truck through Stratford. Because the truck developed mechanical problems, the defendant drove the truck to the house of her brother, Ellsworth Hull, where the engine stopped running. Hull, who never noticed the victim's body in the bed of the truck, was unable to jump start the vehicle. Hull then drove Meyer and the defendant home. Meyer never saw the victim's body again. One week later, Meyer learned that the victim's body had been found floating in Long Island Sound.
Because Meyer feared for her life as a result of the defendant's threats, she did not tell the police about the incident until 1992. On September 2, 1992, after reading an article in the local newspaper about the unsolved murder, Meyer told Hull, in whose home she was then living, about the murder. Meyer contacted the police that same day and implicated the defendant. After an investigation in which Meyer assisted the police the defendant was arrested and charged in a one count information with murder." State v. Tomasko, supra, 238 Conn. 255-256.
A review of the factual situation at the time of the homicide is important because petitioner's version differs from the facts presumably found by the jury. Petitioner claims that she did not shoot her husband, CT Page 7495 but that the fatal shot was fired by her daughter, Suzette Meyer. Because of the two opposing versions as to who did the shooting, Attorney Ganim felt that the credibility of the daughter would be the principle issue in the prosecution's case. This does not appear in dispute. The attorney felt that his client would be at a disadvantage in this contest. He felt that a jury would be more likely to believe a daughter testifying against a mother than mother against daughter. The credibility issue affected many of the decisions made by Attorney Ganim during the trial.
Petitioner claims that Attorney Ganim did not adequately cross examine witnesses who testified against her. One such witness was petitioner's brother, Ellsworth Hull. It was claimed by Attorney Chris DeMarco, a lawyer experienced in criminal trials who testified as an expert witness called by petitioner that Attorney Ganim's cross examination of this witness was defective in that he elicited testimony that Hull had accused petitioner of abusing an elderly aunt and causing her death. It was brought out that Hull also caused an autopsy to be performed on the aunt. It was claimed by the expert that this testimony was prejudicial to petitioner. Attorney Ganim testified in the habeas proceedings that he brought these facts out to show the animosity of Hull towards petitioner who inherited all of the aunt's estate. Hull was forced to admit that no substance was found to the charges and the aunt died of natural causes.
Meyer had left her mother's home and was living in Hull's home at the time of the trial. By his cross examination of Hull, Ganim attempted to show the close relationship between Hull and Meyer. By bringing out Hull's accusations against petitioner, the attorney was attempting also to show bias on the part of both Hull and Meyer against petitioner. In this way, Attorney Ganim was attempting to discredit both witnesses. For example, at one point during this cross examination, the state's attorney claimed that Attorney Ganim was attempting to destroy the reputation of a person (Meyer) who had not yet testified.
Petitioner also argued that Attorney Ganim's cross examination of Suzette Meyer was defective. It was argued that the attorney failed to impeach Meyer on the issue of reward money. As the Supreme Court found, Meyer did not inform the police about the homicide, or petitioner's involvement, until she read an article in the newspaper about the unsolved crime in 1992. This article contained information about a reward. Petitioner's expert opined that Attorney Ganim was remiss in not cross examining about her interest in this reward.
The trial transcript indicates that on June 15, 1994, Attorney Ganim did cross examine Meyer about her financial situation and her knowledge of the reward. It was also brought out that she did discussed with the state's attorney that she would be cross examined on this subject. Her CT Page 7496 answers disclaimed any knowledge of a reward being offered at that time. Her credibility on the issue was effectively put before the jury.
There is no evidence that further questioning of Meyer about the reward would have benefitted petitioner or that Attorney Ganim's failure to delve into this area constitutes defective advocacy. At the time, Meyer had not claimed the reward and testified that she was not seeking the reward. Additional questions on the subject would have been speculative at best. Attorney Meyer did cross examine Ellsworth Hull about the reward and inquired if he had discussed it with Meyer. Hull denied any interest in the reward and any conversations with Meyer. This examination before the jury was not significant.
At the start of the criminal trial on June 9th, 1994, the court ordered the sequestration of all witnesses. There was no elaboration to this order. Connecticut Practice Book § 42-36 requires that the court sequester any witnesses during a hearing of any issues or part of a trial in which the witness is not testifying upon the request of the prosecution or the defense. There was evidence that Suzette Meyer discussed Ellsworth Hull's testimony with him prior to her testifying.
It was claimed that Attorney Ganim was defective in his representation of petitioner because he did not move to strike Meyer's testimony for violating the sequestration order. Ganim did not consider this a serious violation of the order. Therefore, he made no such motion. The issue came up during Attorney Ganim's cross examination of Meyer. He asked Meyer if she talked to her Uncle Ellsworth before she came to court that morning. She stated that she did and that he briefly recounted his testimony. She styled it a casual conversation and she did not remember much about it. The attorney placed this conversation before the jury where it could be used to affect Meyer's credibility.
Under the circumstances of this case, it is extremely doubtful that Meyer's testimony would have been stricken in any event. The sequestration order was not elaborate and in its narrowest connotation went just as far as ordering all witnesses from the courtroom except when they appeared as witnesses. State v. Williams, 169 Conn. 322, 331
(1975). At the conclusion of her testimony, Mr. Hull, like all previous witnesses, was not instructed to refrain from discussing his testimony with anyone. The purpose of the sequestration order, while another is testifying, is to prevent the one sequestered from shaping his or her testimony to corroborate falsely the testimony of another. State v.Falby, 187 Conn. 6, 26-27 (1982). In this light, there may have been a technical violation of the concept of sequestration. State v. Nguyen,253 Conn. 639, 651 (2000). CT Page 7497
It should be kept in mind, however, that the most important part of Meyer's testimony was her description of the shooting and the placing of the body into the truck. Hull had no direct knowledge of these events and his testimony did not touch on these matters. For this reason, it was not possible that a discussion of Hull's testimony could have tailored Meyer's principal testimony. The controlling consideration is whether petitioner was prejudiced by the violation. It is extremely doubtful that Attorney Ganim would have been successful if he had moved to strike Meyer's testimony. State v. Robinson, 230 Conn. 591, 599-601 (1994).
It was also alleged that Attorney Ganim was guilty of inadequate representation of petitioner in his cross examination of Meyer and Hull in that he failed to impeach their testimony by bringing up the granting of immunity from prosecution. Meyer testified before the jury that at the time she first approached the police with her description of the homicide she was represented by an attorney. At that time, she testified immunity had been discussed and would be granted if she had not shot the victim and if she had not helped dispose of the body. At the time of the criminal trial, Attorney Ganim was aware from his discussions with the state's attorney that immunity had not been granted to Meyer or Hull.
Under the circumstances, it is difficult to see how cross examination on the issue of immunity would have benefitted petitioner. It cannot be found that Attorney Ganim was remiss in not exploring this issue in his cross examination of either Meyer or Hull.
Petitioner has also alleged that Attorney Ganim was deficient in his representation of her when he allowed an inadequate diagram of the crime scene to come into evidence. During Meyer's direct testimony, the state offered into evidence a diagram of the crime scene. A review of the transcript indicates that this diagram was not totally accurate. The transcript also indicates that while the admissibility of the diagram was being considered, Attorney Ganim conferred with his client on more than one occasion. His recollection of the event is that she had no great objection to the diagram. Attorney Ganim did not consider the discrepancies in the exhibit significant. While the attorney did not object to the admission of the diagram, the record is clear that he did not stipulate or agree to its admissibility. After discussion on admissibility, and oral corrections by the witness, the judge allowed the diagram to come into evidence. The court ruled that the discrepancies might affect the credibility and weight to be afforded the document.
In his cross examination of Meyer, Ganim explored the discrepancies above mentioned and the true shape of the table and other matters were adequately put before the jury. CT Page 7498
Although an adequate diagram of the crime scene could be important, it cannot be found that Attorney Ganim was deficient with respect to the diagram offered coming into evidence. He did not consider the inaccuracy serious, but he did not agree to its admissibility. The judge considered it was sufficiently accurate and admitted the document into evidence.
Along the same line, petitioner claims that Attorney Ganim failed to pursue deficiencies in the police examination of the crime scene and, in particular, the failure to find the bullet. The location of the bullet could have affected the credibility of Meyer who testified that she heard the bullet pass by her head. The bullet would have passed through the victim's head and become imbedded in the wall.
The failure to find the bullet or to identify the bullet hole could have been important if it was at variance with Meyer's version of the shooting. Since the bullet hole could not be located, Meyer's testimony could not be impeached or corroborated by its location. It does not appear that petitioner suffered any actual prejudice from this fact and it is doubtful that more intense cross examination would have been productive. It should also be kept in mind that at the time of the original police investigation in 1981, the police did not know where the shooting took place.
It is also alleged that Attorney Ganim was ineffective in his cross examination of the medical examiner, Dr. Melka Shah, who performed the autopsy and testified in the case. Petitioner claims that Attorney Ganim was remiss in not going into more detail with the medical examiner to establish that no gun powder residue was found on the victim's body. If it was established that Meyer's version of the shooting placed the weapon in petitioner's hands close enough to the victim's head to cause such marking, the lack of such residue might affect the believability of Meyer's testimony.
It does not appear that this aspect of the case was pursued by Attorney Ganim. There is little evidence of the distance between the victim's head and the weapon at the time the shot was fired. Even if inquiry into this area had been made, it may not have been possible for the medical examiner to have testified on the subject. Certainly an experienced medical examiner, as Dr. Shah was, would have noted gun powder residue and testified to the same if it had been present. The body had been in the water for some time. Dr. Shah testified that the skin on the head had decomposed to such an extent that she could not distinguish the exit wound from the entrance wound. Under the circumstances, it has not been established that gun powder residue could have been detected. Attorney Ganim did not consider this aspect of the case worth pursuing. CT Page 7499
Petitioner also alleged that Attorney Ganim was ineffective in representing her and that he failed to adequately communicate with her. This has not been proven. The better evidence shows that Attorney Ganim and his staff met with petitioner on many occasions to obtain information and prepare for trial. He communicated a possible plea bargain to her. This was rejected by petitioner and preparations for trial were made. At one of these meetings, petitioner submitted the name of an important defense witness. No lack of adequate communications between attorney and client have been shown.
Petitioner claims that Attorney Ganim's representation of her constituted ineffective assistance of counsel. An expert witness called by her gave his opinion that certain aspects of Attorney Ganim's representation were deficient. In order to prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced the petitioner. Strickland v. Washington, supra, 466 U.S. 687-88.
"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." Johnson v. Commissioner, 218 Conn. 403,425 (1991). (Citations omitted; internal quotation marks omitted.)
In this case, petitioner was represented by Attorney Ganim, a lawyer who had been in practice for over 35 years and had tried over 20 murder cases to conclusion. Attorney Ganim elected to concentrate on the most important issue in the case, the credibility of Suzette Meyer as opposed to his client. In so doing, he did not place as much significance on other matters noted, as did petitioner's expert. It has not been proven that in representing petitioner on the charge of murder, Attorney Ganim's performance fell below the required standard of reasonable competence displayed by lawyers with ordinary training and skill in the criminal law or that any lack of competence contributed so significantly to CT Page 7500 petitioner's conviction as to have deprived her of a fair trial.
Accordingly, the petition is dismissed.
 Joseph J. Purtill Judge Trial Referee